UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Yvette Williams,

    Plaintiff,

v.

Nationwide Insurance Company,

    Defendant.

                               /

Case No. 12-13904

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT NATIONWIDE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT [53]**

Currently before the Court is Defendant Nationwide Insurance Company's motion for summary judgment. Plaintiff, Yvette Williams, opposes the motion, arguing that there are multiple issue of material fact and that Defendant waived certain requirements under the policy. For the reasons set forth below, the Court GRANTS Defendant's motion for summary judgment and DISMISSES this case with prejudice.

**I.    FACTS**

This case arises out of Defendant's denial of a claim Plaintiff submitted on her homeowner's policy for damage to her house. Plaintiff owns the house located at 17562 Ramsgate, Southfield, Michigan (the "Ramsgate property). She has maintained uninterrupted insurance coverage on the Ramsgate property through Defendant, under policy number 91-HP-082-537 since October 15, 2002.

Plaintiff's policy states, in pertinent part:

We will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all the policy provisions.

\*        \*        \*

POLICY EXCLUSIONS

We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

c) Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at the time of and after a loss, or when property is endangered by a covered peril.

\*        \*        \*

POLICY CONDITIONS

3. Your Duties after Loss. In case of loss, you must:

\*        \*        \*

b) protect the property from further damage ....

\*        \*        \*

d) submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    (1)    the time and cause of loss.
    (2)    interest of the insured and all others in the property involved and all liens on the property.
    (3)    other insurance that may cover the loss.
    (4)    changes in title or occupancy of the property during the term of the policy.
    (5)    specifications of any damaged property and detailed estimates for repair of damage.
    (6)    a list of damaged personal property showing in detail the quantity, description, actual cash value, and amount of loss. Attach all bills and receipts that support the figures.
    (7)    receipts for additional living expenses and records supporting the fair rental value loss.

      (8)    evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.

\*    \*    \*

<u>Michigan Amendatory Endorsement</u>

GENERAL POLICY CONDITIONS

(e) You have a duty to notify us as soon as possible of any change which may affect the premium risk under this policy. This includes, but is not limited to, changes:

\*    \*    \*

      (2) in the occupancy or use of the residence premises . . . .

CONCEALMENT, FRAUD, OR MISREPRESENTATION

\*    \*    \*

b) We may void this policy, or deny coverage for a loss, or at our election, assert any other remedy available under applicable law, if any insured person or any other person seeking coverage under this policy has knowingly or unknowingly concealed or misrepresented any material fact or engaged in fraudulent conduct in connection with the filing or settlement of any claim.

The policy defines "residence premises" as "the one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated." The policy lists the residence premises in the declarations as 17562 Ramsgate Lathrup Village, Michigan.

On March 18, 2011 Plaintiff notified Defendant of substantial water damage to the Ramsgate property. The damage to the house was the result of a broken water pipe which was running for an unknown amount of time prior to Plaintiff's discovery of the condition. On April 1, 2011, Defendant, pursuant to the insurance policy, requested that Plaintiff

provide a "proof of loss" within sixty days. Plaintiff admits receiving the proof of loss request letter, and Plaintiff's attorney sent a letter to Defendant indicating that she had a copy of the policy and requesting clarification of the proof of loss requirements. Although Plaintiff claims that the proof of loss was submitted at a June 3, 2011 deposition taken during Defendant's investigation of the claim, no such document has been submitted to the Court by either party, Defendant maintains that it never received the proof of the loss, and the record indicates that Defendant continued to ask Plaintiff about the proof of loss after the date on which she claims that it was provided to Defendant, up to and including during discovery in this case.

Additionally, Defendant has unearthed an overwhelming amount of evidence that suggests that Plaintiff did not live at the Ramsgate property from 2008 through 2011. Specifically, Defendant points to Plaintiff's employment records, which indicate that she was working first in Arizona, and then in Hawaii for three different companies. Defendant also has submitted Plaintiff's Arizona driver's license, Plaintiff's Hawaiian bank account and Hawaiian unemployment benefits information, in addition to an affidavit sworn to by Plaintiff's Hawaiian roommate. Defendant has provided two records from its Fraud Hotline, indicating that calls were placed to Defendant to report that the Ramsgate property was vacant, and Defendant has provided deposition testimony from individuals living near the Ramsgate property who state that the property appeared vacant. Additionally, Defendant has provided records from the two moving companies that were contracted to move Plaintiff's belongings from Michigan to Arizona and Hawaii. Finally, Defendant has provided records of the utility usage for the Ramsgate property from 2008 through 2011 which does not comport with the usage of an occupied home.

In response, Plaintiff states that she has always lived in the Ramsgate property, but only traveled to Arizona and Hawaii for work. She submits a limited amount of information regarding flights back and forth from Hawaii to Michigan. Plaintiff also submits her bank account statements, which show some purchases in Michigan between 2008 and 2011. Plaintiff also points to the deposition testimony of Michael Abood. Mr. Abood testified that he saw Plaintiff coming and going from the Ramsgate property between 2008 and 2011. The Court notes, however, that Michael Abood is one of the people Defendant has a record of calling in to report that the Ramsgate property was vacant.

On February 14, 2011 Plaintiff secured a position with Henry Ford Hospital in Michigan. This employment coincided with Plaintiff taking on the role as a care giver for her ailing father, who also lives in Michigan.

Additionally, the Court notes that Plaintiff's refusal to comply with the discovery rulings issued by the Magistrate in this case have resulted in multiple sanctions being issued against her.

Defendant filed its motion for summary judgment on February 10, 2014. Plaintiff's response was due on March 3, 2014, but was not filed until April 1, 2014, almost a month late. Defendant timely filed a reply.

II. ANALYSIS

A. The Standard on Motion for Summary Judgment

The Sixth Circuit employs the familiar standard for summary judgment, namely, that summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Moreover, "[i]n order to survive a motion for summary judgment, the non-moving party must be able to show 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing and quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

Additionally, this case is before the Court by way of diversity jurisdiction, and as such, this Court must apply the substantive law of Michigan. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Furthermore, where an issue of state law has not been decided by the Michigan Supreme Court, this Court will determine how Michigan's Supreme Court would decide the issue were it faced with it. The Court will heed the decisions of Michigan's intermediate appellate courts except where the Court is persuaded that the Michigan Supreme Court would not so decide, and the Court may consider applicable dicta of Michigan's highest court. *Pack v. Damon Corp.*, 434 F.3d 810, 818 (6th Cir. 2006)

**B. There Is No Dispute Regarding Plaintiff's Failure to Timely Provide the Requested Proof of Loss**

Defendant argues that it is entitled to summary judgment because Plaintiff never provided a proof of loss as required by the insurance policy at issue and Michigan law. Plaintiff argues that she did provided the proof of loss, and, regardless, that Defendant waived the proof of loss requirement.

Here, there is no evidence, other than Plaintiff's own testimony, that a proof of loss was ever submitted. However, taking all of the facts before the Court in the light most favorable to Plaintiff, and assuming for the purposes of argument that Plaintiff did submit a proof of loss on June 3, 2011, as she claims, Defendant is still entitled to summary judgment.

The Sixth Circuit has squarely addressed Michigan's proof of loss requirement. In *Westfield Ins. Co. v. Appleton*, 132 F. App'x 567 (6th Cir. 2005), the Sixth Circuit found that failure to timely submit a proof of loss statement, as required by an insurance policy, is fatal to a claim for coverage. *Westfield Insurance* dealt with an untimely proof of loss and the plaintiffs' claims, *inter alia*, that the insurance company had waived the proof of loss requirement. The Sixth Circuit noted that Michigan law "strongly favors insurance companies in connection with insurance policies that contain the somewhat standard 'proof of loss' requirement." *Westfield Ins. Co.* 132 F. App'x at 570. Further, the *Westfield Insurance* Court noted that

> [i]t has long been the practice under Michigan law that an insured has the burden of proving that the insurer waived the policy provision requiring a proof of loss statement. Further, the question of whether there has been a waiver of the requirement of ... proof of loss is a question of law where the material facts are not disputed, or where the evidence is insufficient to go to the jury. An insurer may impliedly waive the "proof of loss" requirement in its

7

> policy if its conduct could reasonably create a belief in an insured's mind that proof of the loss is unnecessary.

*Id.*, 132 F. App'x at 572 (internal citations and quotations omitted).

It is undisputed that Defendant requested the proof of loss on April 1, 2011, making Plaintiff's alleged submission of the proof of loss on June 3, 2011 three days late. Plaintiff, in passing, notes that the proof of loss was not late because she did not receive the letter requesting it until April 6, 2011. Plaintiff points to no law to support the position that the sixty days should be calculated from the date she received the request, as opposed to the day Defendant made the request. The Court is not convinced that the sixty days should being to run from April 6, especially under the facts of this case, where the policy specifically states that the proof of loss is due sixty days *after the insurer requests it*, and the letter requesting the proof of loss reiterates that time frame with no mention as to Plaintiff's receipt of the letter.

Plaintiff's waiver argument is based on Defendant's alleged failure to provide a copy of the insurance policy to aid in completing the proof of loss. That argument is contrary to the facts before the Court. Plaintiff's attorney states that on May 6, 2011 she advised Defendant that she did not have a copy of the policy. In a letter provided by Plaintiff dated May 6, 2011, however, no such statement is made. In fact, the language of the letter suggests that Plaintiff's attorney was in possession of the policy. Specifically, the letter merely requests that Defendant "clarify" its instructions and, moreover, makes reference to various sections of the policy, creating the inference that Plaintiff's attorney was in possession of a copy of the policy at the time she wrote the May 6 letter. The fact that Plaintiff's attorney did not receive the help she sought from Defendant in filing out the proof

of loss form does not create waiver on Defendant's part, especially where, as here, Defendant repeatedly requested the proof of loss. This is not a case where Defendant's acts prevented Plaintiff from completing the form. Rather, in this case Plaintiff had the benefit of legal counsel, and still failed to provide the proof of loss in a timely manner. In light of this, Plaintiff's waiver argument is meritless. *Westfield Ins. Co.*, 132 F. App'x at 573.

The Court, therefore, is left with a Plaintiff who claims to have submitted a proof of loss late, and nothing beyond her statements that supports the assertion that she submitted it at all. As noted above, Michigan law strongly favors proof of loss requirements, and it is undisputed that - if she submitted one at all - Plaintiff's proof of loss was untimely. The Sixth Circuit has explicitly stated that "it remains the general rule under Michigan law (admittedly unlike in many other states) that 'the failure to file a signed and sworn proof of loss within sixty days bars recovery on a claim without regard to whether the insurer is prejudiced by such failure.'" *Westfield Ins. Co. v. Appleton*, 132 F. App'x at 573 (citing *Dellar v. Frankenmuth Mut. Ins. Co.*, 433 N.W.2d 380, 383 (Mich. Ct. App. 1988) (citing *Reynolds v. Allstate Ins. Co.*, 332 N.W.2d 583 (Mich. Ct. App. 1983)). Defendant, therefore, is entitled to summary judgment, as it was within its rights to deny coverage.

The Court, having reached its decision in favor of Defendant by way of the proof of loss issue need not delve into Defendant's three other arguments, however, a brief outline of the issues is called for.

**C. Defendant's Remaining Arguments for Summary Judgment and the Overwhelming Evidence in its Favor**

Defendant also argues that it should be granted summary judgment because Plaintiff moved out of the house in 2008 and never made the notifications regarding a change of use that her policy requires; that Plaintiff misrepresented facts in connection with her claim, and; that Plaintiff neglected to take reasonable care of the property. Plaintiff maintains that while she traveled to Arizona and Hawaii for work from 2008 through 2011, nevertheless she kept the Ramsgate property as her residence.

Without ruling on the issues, the Court notes that Defendant has provided substantial evidence suggesting that no one was living in the Ramsgate property from 2008 to 2011, and that Plaintiff, while she may have visited Michigan and the Ramsgate property during that time, was living and working in Arizona and then Hawaii. As noted above, in support of its arguments Defendant has submitted records detailing Plaintiff's employment in Arizona and Hawaii, utility usage records for the Ramsgate property, and government records from the states of Arizona and Hawaii just to name a few. Plaintiff's evidence, on the other hand, is consistent with that of a person living in Arizona and Hawaii, but visiting Michigan on a regular basis. Indeed, Plaintiff's evidence, while indicating trips to Michigan, does not require the conclusion that she stayed in, or even visited the Ramsgate property on those trips. Furthermore, Plaintiff's deposition testimony on these issues is highly evasive and her conduct throughout the course of this lawsuit has resulted in more than one sanction being issued against her.

It is in the above context that the Court's applies Michigan's precedent on the timely filing of proofs of loss to the undisputed facts of this case.

The Court therefore, GRANTS Defendant's motion for summary judgment and hereby DISMISSES this case with prejudice.

### III. CONCLUSION

For the reasons stated above, and because it is undisputed that if a proof of loss was submitted, it was not submitted within the sixty day time frame required by the policy, Defendant's motion for summary judgment is hereby GRANTED and this case is DISMISSED with prejudice.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 6, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 6, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager